UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

Alan Granader,　　　　　　　　　　　　　　　Case No. 11-43076-MBM
　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　　　　　Debtor.　　/　　　　　　　　　Hon. Marci B. McIvor

**SUPPLEMENTAL OPINION DENYING CREDITOR JUDITH GRANT'S
MOTION TO REOPEN DEBTOR'S CASE**

On June 25, 2015, this Court entered an Order Denying Judith Grant's Motion to Reopen. Grant's Motion to Reopen was denied because the Court had concluded that Grant lacked standing to file a motion to reopen. On July 22, 2015, this Court entered an Order Granting Grant's Motion for Reconsideration of the Order Denying her Motion to Reopen on the grounds that she lacked standing. However, as a matter of law, there are alternative grounds for denying Grant's Motion to Reopen. For the reasons set forth below, Creditor Judith Grant's Motion to Reopen is DENIED.

I.

FACTUAL BACKGROUND

Judith Grant is debtor Alan Granader's ex-wife. A little history is necessary to understand the arguments made by Grant in her Motion to Reopen.

On August 18, 2005, Alan Granader (hereinafter "Granader" or "Debtor") borrowed $350,000.00 from the Alan Granader Irrevocable Family Trust (the "Trust") and signed a promissory note agreeing to repay that loan.

On May 26, 2006, Judith Grant ("Grant") filed for divorce from Granader. On January 14, 2008, the Oakland County Circuit Court entered a Judgment of Divorce.

Pursuant to a stipulated order and money judgment dated March 19, 2010, entered in the Oakland County divorce case between Grant and Granader (Case No. 06-721399-DO), the balance owed by Granader to Grant arising out of the divorce was $47,146.00.

On April 26, 2010, for reasons not made clear to this Court, the Trust assigned the 2005 promissory note signed by Granader to Grant. It is undisputed that Granader was not a party to the agreement to assign the note from the Trust to Grant. It is also undisputed that the Judgment of Divorce (entered on January 14, 2008) made no reference to the promissory note.

On February 8, 2011, Granader filed for Chapter 7 bankruptcy. Granader listed the balance owed arising out of the Judgment of Divorce ($47,146.00) on Schedule E (Creditor's Holding Unsecured Priority Claims). The liability arising out of the assignment of the note from the Trust to Grant ($350,000) is disclosed on Schedule F (Creditor's Holding Unsecured Non-Priority Claims).

On July 19, 2011, Granader received his discharge. On July 27, 2011, the Chapter 7 Trustee filed a Report of No Distribution.

On August 26, 2011, the case was closed.

On or before April 2015, Grant filed multiple pleadings in the divorce case. Those pleadings were: (1) a Motion for preliminary injunction against Rosellen Gliner (Granader's current wife), Sylvia Granader (Granader's mother) and the Sylvia Granader Trust; (2) a Motion to rescind and void the April 2010 agreement between

2

Grant and Leonard Nagel, as trustee of the Trust; and (3) a Motion to hold Dan Granader in contempt. Each of these motions was voluntarily withdrawn by Grant, without prejudice.

On April 28, 2015, Grant filed a "Motion for Declaratory Ruling that Alan Granader is Personally Liable for Monthly Private Annuity Payments Under Judgment of Divorce" in the Oakland County Circuit Court. That Motion stated:

1) On August 18, 2005, the Alan Granader Irrevocable Family Trust loaned Mr. Granader $350,000. Mr. Granader signed a promissory note agreeing to repay this loan.

2) On April 26, 2010, the Trust assigned the Note to Judith Grant.

3) Mr. Granader was NOT a party to the agreement to assign the note from the Trust to Grant.

4) Mr. Granader listed his liability on the Note which had been assigned to Mr. Grant on Schedule F of his Bankruptcy Schedules.

The relief requested by Grant in her Motion was as follows:

WHEREFORE, Plaintiff prays this Honorable Court issue a declaratory ruling that Alan Granader is personally liable for monthly private annuity payments under Judgment of Divorce and grant Plaintiff such other further relief as this Court determines to be just and equitable.

In May of 2015, Grant initiated three lawsuits in the Oakland County Circuit Court: (1) against Rosellen Gliner as a recipient of fraudulent transfers (Case No. 15-146883-CZ); (2) against Sylvia Grander and the Sylvia Granader Trust (Case No. 15-146882-CZ) as recipients of fraudulent transfers; and (3) against Leonard Nagel (Case No. 15-147390-CZ) as trustee of the Trust to set aside the 2010 settlement. According to Granader, Grant offered to dismiss each of those cases without prejudice after answers were filed. It is unclear whether these cases remain open in Oakland

3

County Circuit Court.

On June 3, 2015, the Oakland County Circuit Court denied Grant's Motion for Declaratory Judgment. As part of its denial of Grant's Motion for Declaratory Judgment, the court stated:

> THE COURT: All right, thank you. **The Court agrees with Mr. Weaver. The–I'm bound by your judgment of divorce.** You had a very lengthy trial in 2007. **Your judgment of divorce was very clear that in the event the private annuity fails to provide you, you can come to the Court and ask for spousal support. So, I am denying your motion on that for the–the money judgment, the declaratory judgment.** If you decide after today to–that you need spousal support and he has the ability to pay, then the Court would–would entertain that idea and maybe that's something the four of you could work out outside of a lengthy Court battle.

Transcript, June 3, 2015, Oakland County Circuit Court, *Grant v. Granader,* at 8, 34 (emphasis added).[1]

On June 4, 2015, Granader remitted two checks to Grant in the amounts of $52,038 and $1,000, respectively.

On June 8, 2015, the Oakland County Circuit Court issued a written order denying Grant's Motion. That Order stated:

> Plaintiff's Motion for Declaratory Judgment Against Defendant is denied.
>
> Plaintiff's Motion for show cause against Defendant is denied.
>
> Plaintiff's Request for interim attorney fees is denied, except for Defendant paying $1,000 in attorneys fees, within one week, relative to Plaintiff having to file a motion to collect on the 3/19/10 stipulated order and money judgment. Defendant shall pay the money judgment in the amount of $52,038 by 6/4/15. Upon payment of $52,038 all liens and garnishments shall be released. All funds should be paid via certified or cashiers check and made payable to "Goldstein, Bershad & Fried, P.C."

---

[1]This portion of the transcript was provided to this Court by Grant in her Motion for Reconsideration.

On June 12, 2015, Grant, filed a Motion to Reopen Debtor's Chapter 7 case in this Court. In her motion to reopen, Grant seeks:

(1) to recover fraudulent transfers made by Granader to his mother and/or her trust, and to his current wife;

(2) to file an adversary proceeding to determine the dischargeability of $350,000 debt owed to Grant "as this debt related back to a domestic support obligation arising under the divorce judgment"; and

(3) to refer the Granader to the Department of Justice for investigation of tax and bankruptcy fraud.

At a hearing on June 23, 2015, this Court issued a bench opinion denying Grant's Motion to Reopen on the grounds that she lacked standing. On June 25, 2015, this Court entered an Order Denying Creditor Grant's Motion to Reopen Chapter 7 case. On July 9, 2015, Grant filed a Motion for Reconsideration of this Court's Order Denying her Motion to Reopen. On July 21, 2015, this Court granted, in part, Grant's Motion for Reconsideration, finding that the Court had erred in holding that Grant lacked standing. However, this Court finds that there are alternative grounds for denying Grant's Motion to Reopen. The Court is issuing this Opinion to supplement the bench opinion issued on June 23, 2015.

II.

ANALYSIS

**A.   Motions to Reopen Generally**

Bankruptcy Code § 350(a) provides that a case may be closed after the estate is fully administered.

> (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

5

11 U.S.C. § 350(a). Section 350(b) provides that a case may be reopened to administer assets.

> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or for other cause.

11 U.S.C. § 350(b). Bankruptcy Rule 5010 provides that a case may be reopened pursuant to § 350(b) on motion of the debtor or other party in interest. A party in interest is generally limited to the debtor, a creditor or a Trustee. *See, Nintendo Co. V. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353 (10th Cir. 1995)(notwithstanding expansive definition of "party in interest," for purpose of reopening a bankruptcy case, the concept of standing is "implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code.")

The decision to grant or deny a Motion to Reopen is within the bankruptcy judge's sound discretion. *In re Tarkington*, 301 B.R. 502, 506 (Bankr. E.D. Tenn. 2003). Because there are no statutory criteria defining "cause" for reopening a closed case, motions to reopen should be decided on a case by case basis, "consider[ing] the equities of each case with an eye toward the principles which underlie the Bankruptcy Code." *In re Kapsin*, 265 B.R. 778, 779–80 (Bankr. N.D. Ohio 2001). A Court will not reopen a case if doing so would not afford the moving party the relief it seeks or if there is no clear benefit to creditors by reopening the case. *See, Chanute Prod. Credit Assoc. v. Schicke (In re Schicke)*, 290 B.R. 792, 798 (10th Cir. BAP 2003); *Virgin Islands Bureau of Internal Revenue v. St. Croix Hotel Corp.*, 60 B.R. 412, 414 (D.V.I. 1986). The doctrine of laches may justify the denial of a motion to reopen a case because the chief purpose of bankruptcy is to secure a prompt administration of assets within a

6

limited period of time. *In re Nelson*, 100 B.R. 905, 907 (Bankr. N.D. Ohio 1989). The movant bears the burden of demonstrating that cause exists for the reopening of a case. *In re Cloninger III*, 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997). The decision to grant or deny a motion to reopen is binding on review absent a clear showing that there was an abuse of discretion. *St. Croix Hotel Corp.*, 60 B.R. at 412.

### B. Reopening the Case Is Not Necessary for a Determination of Non-dischargeability.

The first argument made by Grant in her Motion for Reconsideration is that the Court erred in concluding that the $350,000 obligation listed on Granader's Schedule F was discharged in Granader's bankruptcy case. Grant argues that the bankruptcy case must be reopened because the issue of whether that obligation was discharged has never been litigated, and the Bankruptcy Court is the proper forum for litigating that issue.

This Court disagrees. While Grant is correct that the Bankruptcy Code imposes no deadline by which a party may file an action seeking a determination as to whether a debt arising out of a judgment of divorce is dischargeable (*see,* 11 U.S.C. § 523(c) and 11 U.S.C. §§ 523(a)(5) and (a)(15)), the case law cited by Grant is not applicable to the facts of this case. A non-dischargeability action under 11 U.S.C. §§ 523(a)(5) or (a)(15) relates only to debts arising out of a divorce or separation agreement. *See*, 11 U.S.C. 101(14A)(definition of domestic support obligation); *In re Kassicieh*, 425 B.R. 467, 473 ( Bankr. S.D. Ohio 2010)(discussion of what is a domestic support obligation); *In re Williams*, 398 B.R. 464, 468 (Bankr. N.D. Ohio 2008)(discussion of elements of

property settlements).

This Court finds that the $350,000 debt which Grant seeks to have held non-dischargeable is *not* a debt arising out of the judgment of divorce.  First, the assignment by the Trust of the $350,000 note did not occur until two years after the entry of the Judgment of Divorce, and the Judgment of Divorce was not modified after Grant took the assignment from the Trust. Furthermore, it is undisputed that Granader was not a party to the assignment.  While it is clear from Grant's pleadings that Grant hoped that collection of the note would provide her with additional income, it is equally clear that her right to collect on the note was a right separate and apart from any rights she had arising out of the Judgment of Divorce.

Second, the transcript cited by Grant in her Motion for Reconsideration supports this Court's finding that the $350,000 debt is not a debt arising out of the Judgment of Divorce.  While this Court is loathe to interpret the rulings of other judges, it seems clear in this case that the Oakland County Circuit Court never mentioned the $350,000 note in the Court's June 3, 2015 bench opinion because that debt did not arise out of the Judgment of Divorce; it arose out of Grant's acceptance of an assignment from the Trust.  Grant does retain, pursuant to the Judgment of Divorce, the right to seek additional spousal support.  The issue of whether Grant is entitled to additional spousal support will have to be decided by the state court.  If, at some point in the future, the state court determines that Grant is entitled to additional spousal support, there is no question that the additional spousal support would be a nondischargeable obligation. *See, In re Hutchinson,* 270 B.R. 429, 435 (Bankr. E.D. Mich. 2001) (a support order entered after a debtor's order of discharge remains a nondischargeable obligation).

This Court finds that the record does not support Grant's argument that Granader's bankruptcy case must be reopened for her to file a nondischargeability action. The Order of Discharge entered on July 9, 2011 discharged Granader's unsecured obligation on the note assigned to Grant by the Trust. If, in the future, the state court determines that Grant is entitled to additional support, that support obligation is nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

### C. Reopening this Case Will Provide No Benefit to Creditors That Cannot Be Obtained in State Court

Grant's next argument is that reopening Granader's bankruptcy case will provide a benefit to all creditors. Grant's argument may be summarized as follows: (1) prior to filing for bankruptcy, Granader made either preferential or fraudulent transfers to insiders; (2) Granader failed to disclose those transfers in his bankruptcy case; and (3) if the case were reopened, a Chapter 7 Trustee could recover those transfers for the benefit of creditors.

This Court finds that Grant's argument lacks merit because the burden placed on this Court, the Trustee and Debtor outweighs any benefit potentially realized by creditors. Grant has already filed fraudulent transfer actions in state court. Fraudulent transfer actions are not a bankruptcy specific cause of action and may be pursued in state court. In fact, the United States Supreme Court suggested in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that bankruptcy courts do not have constitutional authority to enter final judgments in fraudulent transfer actions. As a practical matter, Grant, suing on her own behalf in state court, will net a far greater recovery than if a Trustee seeks to

9

recover fraudulent transfers, which will then have to be divided among all Granader's creditors. When weighing the burden that reopening this case places on this Court, the Trustee, and Granader against the total lack of burden imposed on Grant by having to file, or in this case, to continue to pursue, her fraudulent transfer action in state court, the Court concludes that Grant's "benefit to creditors" argument is insufficient to justify reopening this case.

The cases cited by Grant in support of her argument that reopening this case will confer a benefit on creditors are easily distinguishable from the instant case. In *In re Arana*, 456 B.R. 161, (E.D. N.Y. 2011), the undisclosed asset was a prepetition medical malpractice claim on which the debtors recovered post-petition. Similarly, in *In re Upshur*, 317 B.R. 446 (N.D. Ga. 2004) and *In re Dewberry*, 266 B.R. 916 (Bankr. S.D. Ga. 2001), the undisclosed asset was a pre-petition cause of action belonging to the *debtor*. In the instant case, the allegedly "omitted assets" are *not* assets of the debtor, but are, instead, fraudulent transfer claims. While these fraudulent transfers claims could be pursued by a reappointed Chapter 7 Trustee, the claims in this case are better pursued in state court given that there is a strong likelihood that a Trustee would incur significant expense, recovery is uncertain, *and* Grant has already commenced her own fraudulent transfer claims in the Oakland County Circuit Court. On these facts, reopening this case does not confer a benefit on creditors.

### D. The Motion to Reopen on the Grounds of Fraud upon the Court Is Barred by the Doctrine of Laches.

Grant's last argument in support of reopening Granader's bankruptcy case is that

Granader failed to disclose fraudulent transfers and sources of income and, thus, perpetuated a fraud on the Bankruptcy Court. This Court takes very seriously any allegations of fraud on the Court. However, despite this seriousness of these allegations, in the context of a motion to reopen, the Court must also consider the importance of the prompt and efficient administration of bankruptcy cases. In *Virgin Islands Bureau of Revenue v. St. Croix Hotel Corp.,* 60 B.R. 412, 414 (D.V.I. 1986), the court discussed the importance of the prompt administration of a bankruptcy estate:

> The consensus of authority holds that the most important consideration in deciding to reopen the case is the timeliness of the motion. *E.g., In re Tyler,* 27 B.R. 289, 292 (E.D.Va. 1983); *In re Serafini,* 30 B.R. 606, 608 (Bkrcy.W.D. Pa. 1983); *Matter of Admire,* 15 B.R. 405, 407 (W.D. Mo. 1981); *Ridill, supra* at 218. At the heart of this view is the doctrine of laches, which not only applies in bankruptcy proceedings but is "an important consideration because the chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period of time.' " *Crosby v. Mills,* 413, F.2d 1273, 1276 (10th Cir. 1969) *quoting Katchen v. Landy* 382 U.S. 323, 328, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966).

*See also, In re Nelson,* 100 B.R. 905 (Bankr. N.D. Ohio, 1989).

Grant states that her reason for waiting to file her Motion to Reopen until almost four years after Granader's bankruptcy case was closed is that she had ineffective counsel during Granader's bankruptcy case. She states that, in 2014, her new attorney took discovery and found fraudulent pre-petition transfers. Grant does not assert that the fraudulent transfers could not have been discovered during the bankruptcy case; she only asserts that she did not discover the fraudulent transfers until late in 2014. This distinction is significant because, even if Granader failed to disclose fraudulent transfers and income, the existence of the fraudulent transfers or income was discoverable in 2011. Granader had in excess of $5,600,000 in general unsecured

11

debt. Given that many of the unsecured creditors were sophisticated creditors (PNC Bank, the IRS, the Michigan Department of Treasury), the Court is certain that some of those creditors were represented by competent counsel who had every motive to find undisclosed assets. In fact, neither the Trustee nor any of Granader's forty-two unsecured creditors pursued a nondischargeability action against him for failure to disclose assets.

On these facts, this Court finds that Grant's argument that ineffective assistance of counsel prevented her from bringing Granader's fraud to the Court's attention in a more timely manner is unpersuasive.[2] In a case where the Trustee and unsecured creditors had every reason to ferret out undisclosed assets and fraudulent transfers *while the case was open*, an untimely argument about fraud is insufficient to outweigh the importance of the prompt and efficient administration of this bankruptcy case. For these reasons, Grant's Motion to Reopen, filed four years after Granader's case was closed, is barred by the doctrine of laches.

In arguing that her Motion was timely, Grant cites two cases in which debtors were allowed to reopen their cases more than four years after their cases were closed. In *In re Arana*, 456 B.R. 161 (E.D.N.Y. 2011), the court held that cause existed to allow non-English speaking *pro se* debtors to reopen their bankruptcy case five years after it was closed to schedule an undisclosed medical malpractice claim. In *In re Stein,* 394

---

[2]The Bankruptcy Code provides the Chapter 7 Trustee and creditors with remedies to investigate the accuracy of a debtors schedules and statement of financial affairs. 11 U.S.C. § 341 requires that debtors testify under oath as to their financial condition. Fed. R. Bankr. P. 2004 allows the Trustee and creditors to thoroughly investigate the financial condition of debtors.

12

B.R. 13 (E.D.N.Y. 2008), the court allowed a debtor to reopen his bankruptcy case more than eight years after the case was closed to amend Schedule A to list his interest in a piece of real property. In *Stein*, notwithstanding the fact that debtor's name was on the title of the property owned with his deceased ex-wife, the administrator of the ex-wife's probate estate alleged that debtor was equitably estopped from asserting his interest because he had failed to list the property on his bankruptcy schedules. The court found it would be inequitable to deny debtor's motion to reopen.

The Bankruptcy Code imposes no time limitations on a motion to reopen. However, every motion to reopen is fact specific and, in each case, the court weighs the potential benefit to the debtor or creditors against the burden reopening the case imposes on the Court. Other than the *Arana* and *Stein* cases, this Court could find no other cases where a motion to reopen was granted when more than four years had elapsed between the closing of the bankruptcy case and the filing of the motion to reopen. *See Matter of Bianucci*, 4 F.3d 526 (CA 7 1993)(motion to reopen denied where two years had elapsed between closing and motion to reopen); *In re Upshur,* 317 B.R. 446 (N.D. Ga. 2004)(debtor's motion to reopen filed within one month of bankruptcy case closing granted to allow debtor to add undisclosed cause of action); *In re Dewberry,* 266 B.R. 916 (S.D.Ga. 2001)(debtor's motion to reopen, filed approximately one year after debtor's case closed, granted to allow debtor to add undisclosed cause of action); *Miller v. Shallowford Community Hospital (In re Miller),* 767 F.2d 1556 (11th Cir. 1985)(motion to reopen filed less than one year after case closed granted to allow trustee to administer proceeds of a pre-petition claim of debtor); *In re Kapsin*, 265 B.R. 778 (N.D. Ohio 2001)(motion to reopen filed 1 ½ years after

13

bankruptcy case closed to permit debtor to file adversary proceeding to discharge student loans denied); *In re Nelson*, 100 B.R. 905 (N.D. Ohio 1989)(motion to reopen filed six months after case closed denied where debtors stated no compelling justification for reopening); *St. Croix Hotel Corp.,* 60 B.R. at 414 (IRS's motion to reopen denied when IRS failed to assert its claim until twenty-six months after case closed).

While the above citations represent only a small sample of the cases involving motions to reopen, they appear to be representative of the time frame in which a motion to reopen is generally brought before the court. It is only in cases where the failure to reopen would result in an extraordinarily inequitable result for debtor that courts have been willing to consider a motion to reopen four years after a case has closed. Accordingly, Grant's Motion to Reopen, filed almost four years after Granader's bankruptcy case was closed, is barred by the doctrine of laches.

III.

CONCLUSION

In summary, Grant has failed to present any argument as to how either the law or equity favors reopening this case. First, this Court finds that the $350,000 debt is not part of a property settlement or support obligation arising from the Judgment of Divorce. The debt was a general unsecured obligation discharged in Granader's bankruptcy case. Second, any potential fraudulent transfer actions may be pursued in state court. Third, Grant's justification for waiting four years to file her Motion to Reopen is insufficient to override the importance of the prompt and efficient administration of bankruptcy cases. Grant has failed to establish cause to reopen this bankruptcy case

14

four years after the case was closed. Therefore, Grant's Motion to Reopen is DENIED.

Signed on July 22, 2015

                                     /s/ Marci B. McIvor
                                     Marci B. McIvor
                                     United States Bankruptcy Judge